UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:19-cv-00177-TBR

WALTER J. SMITH                                                                                          PLAINTIFF

v.

UNION INSURANCE COMPANY                                                                  DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court upon Plaintiff Walter Smith's ("Smith") Motion for Partial Summary Judgment. [DN 13.] Defendant has responded. [DN 16.] As such, this matter is ripe for adjudication. For the reasons that follow, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Partial Summary Judgment [DN 13] is **DENIED.**

Defendant has also filed a Motion for Summary Judgment on its Counterclaim. [DN 14.] Smith has responded [DN 15] and Defendant has replied. [DN 17.] For the reasons that follow, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment [DN 14] is **GRANTED.**

**I.   Background**

Smith filed suit in the Trigg County Circuit Court allege Union Insurance owes uninsured motorist coverage and basic reparation benefits to Smith in relation to an injury that occurred on November 8, 2017. [DN 1-1 at PageID 10.] Union Insurance issued a policy to Next Generation Management for the period of May 1, 2017 to May 1, 2018. [DN 13-3 at PageID 431.]

Smith alleges on November 8, 2017, he was hanging TV cables in Trigg County along with Jarrod Champlin in the course of his employment with Next Generation Management. [DN 13-1 at PageID 417.] Smith parked his company truck in the grass on the right side of Canton Road and Champlin parked in a driveway to the left of the road. [*Id.*] Both connected a cable to Champlin's

truck and Champlin was going to drive his truck to the right side of the road so Smith could hang the cable. [*Id.*] Smith stood in the left lane to stop oncoming traffic so Champlin could cross the road. [*Id.*] A vehicle driving in the right lane then crossed into the left lane and hit Smith. [*Id.* at PageID 418.] "The driver of that vehicle is unknown." [*Id.*]

Defendant removed the action to this Court on November 21, 2019 and later filed a Counterclaim. [DNs 1 and 5.] Smith and Defendant now seek summary judgment as to liability for uninsured motorist coverage and basic reparation benefits.

## II.  Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matshushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonable find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). The plaintiff may accomplish this by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence…of a genuine dispute…" Fed. R. Civ. P. 56(c)(1). Mere speculation will not suffice to defeat a motion for summary judgment, "the mere existence of a colorable factual dispute will not defeat a properly

supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Electronic Data Sys. Corp.,* 90 F.3d 1173, 1177 (6th Cir. 1996).

### III. Discussion

**A. Choice of Law**

"A federal court sitting in diversity applies the substantive law of the state in which it sits." *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 566 (6th Cir. 2001). This Court is located in Kentucky, where there is a strong preference for applying Kentucky law. The Sixth Circuit has "noted this provincial tendency in Kentucky choice-of-law rules." *Wallace Hardware Co. Inc. v. Abrams*, 223 F.3d 382, 391 (6th Cir. 2000) (citing *Adam v. J.B. Hunt Transp., Inc.*, 130 F.3d 219, 230–31 (6th Cir. 1997). The Court need only conduct a choice-of-law analysis if a conflict exists between two states' laws. *Asher v. Unarco Material Handling, Inc.,* 737 F.Supp.2d 662, 667–68 (E.D. Ky. 2010) (citing *Williams v. Toys "R" Us*, 138 F. App'x 798, 803 (6th Cir. 2005)).

Here, the policy was issued in Indiana to Next Generation Management, an Indiana company. However, the Court finds there is no conflict between Indiana law and Kentucky law because they both use a similar standard for defining "occupying". As such, this Court need not conduct a choice-of-law analysis.

**B. Uninsured Motorist Coverage Under Kentucky Law**

Defendant argues Smith is not entitled to coverage because he was not occupying the vehicle at the time of the accident. Smith argues that he was occupying the vehicle and is therefore, entitled to coverage. The Court agrees with Defendant.

The policy insures:

    a. Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown repair, servicing "loss" or destruction.

    b. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

    c. The Named Insured for "property damage" only.

[*Id.* at PageID 432.] The GMC Sierra Smith was driving on the day of the accident is a "covered auto". [DN 5-1.] In the policy, "occupying" is defined as "in, upon, getting in, on, out or off." [DN 13-3 at PageID 434.] Smith cites to *Ky. Farm Bureau Mut. Ins. Co. v. McKinney,* 831 S.W.2d 164 (Ky. 1992) to support his position.

In *McKinney,* the insured vehicle stalled on the side of the road, but the bed of the truck was "obstructing the southbound portion of the road". *Id.* at 165. Mrs. Reed, a passenger in the truck, walked approximately 130-200 feet away from the truck to warn drivers of the truck in the road. *Id.* Reed was then struck by an uninsured vehicle. *Id.* The insurance policy defined "occupying" as "in or upon or entering into or alighting from". *Id.* at 166. The Court held Reed was entitled to coverage even though she "was physically outside and away from the disabled vehicle she formerly occupied[.] [T]his record does not reveal any act she took which was not directly connected to the disabled insured vehicle which at the very moment she was struck was creating an actual safety hazard upon that public highway in Jessamine County, Kentucky." *Id.* at 167. The Court adopted four factors to consider when interpreting "occupying". Those factors are:

"(1) There must be a causal relation or connection between the injury and the use of the insured vehicle;

(2) The person asserting coverage must be in a reasonably close geographic proximity to the insured vehicle, although the person need not be actually touching it;

(3) The person must be vehicle oriented rather than highway or sidewalk oriented at the time; and,

(4) The person must also be engaged in a transaction essential to the use of the vehicle at the time"

*Id.* at 168.

### 1. Causal Relation or Connection

Smith argues his conduct was related to both his and Champlin's insured vehicles. Smith states he was attempting to stop traffic so Champlin's insured vehicle could cross the road to Smith's insured vehicle. Defendant argues flagging traffic on foot is entirely distinct from the use of Smith's vehicle. After Champlin safely crossed to the right side of the road, Smith intended to return to his vehicle. [DN 13-1 at PageID 417.] However, the Court agrees Smith's action of stopping traffic is independent of his previous and future intended use of his vehicle.

In *McKinney*, Reed left the insured vehicle to ensure the safety of the vehicle she was using and operating. Here, although Smith intended to return to his vehicle the act of flagging traffic was separate from the use of that vehicle. In *Gill v. Specialty Nat. Ins. Co.*, the Court found Gill was not occupying the vehicle because he did not leave his vehicle for a vehicle related reason. 2006 WL 658900, at *2 (Ky. Ct. App. Mar. 17, 2006) (Here Gill was in the roadway exposed to traffic not because of his vehicle, but rather because of his non-vehicle-related job. He was not vehicle oriented; i.e., he was not entering or exiting the vehicle or attempting to service or secure it. He was, rather, oriented toward the highway and the traffic he was trying to control.") Gill, a police officer, left his vehicle to direct traffic and was struck by an uninsured driver. As in *Gill,* here, Smith left his vehicle not because of his vehicle but to provide safety and control traffic in the road. As such, there is no causal relation to his vehicle.

### 2. Geographic Proximity

Here, Smith states he was approximately ten feet away from his vehicle. This is markedly closer than Reed was to her vehicle in *McKinney*. In *Baker v. Christy*, the Court found a distance

of approximately ten feet presented a question of fact for a jury. 2019 WL 5212898, at *4 (E.D. Ky. Oct. 16, 2019). As such, this factor is not appropriate for summary judgment.

### 3. Vehicle Oriented or Highway Oriented

Here, Smith was, at least in part, focused on highway safety. He was flagging traffic in order to assist Champlin in safely crossing the road. Smith's focus at that time was not on the vehicle he drove to the work site. If Smith was vehicle oriented, it was towards Champlin's vehicle and not the vehicle he had been using. Smith cites to *Chandler v. Am. Guarantee & Liab. Ins. Co.*, 2005 WL 2250836 (E.D. Ky. Sept. 15, 2005) to support his position.

In *Chandler,* Chandler and a work crew drove to a work site in a Department of Transportation truck. *Id.* at 1. The crew was installing roadway signs which required them to get in and out of the truck. *Id.* Chandler parked the truck on the side of the road, but it was partially blocking traffic. *Id.* He stood near the rear of the truck and flagged traffic. *Id.* As he was flagging traffic, he was struck by an uninsured driver. *Id.* The Court found

> "while it may not have been the sole focus, protecting the DOT's insured vehicle was one of Chandler's concerns. Chandler had been driving the truck that morning. He had stopped the vehicle in the travel lane at earlier sign placement locations, and subsequently moved the vehicle further along the road. The accident likely would not have occurred without the use of the DOT truck. In the seconds before impact Chandler's attention, at least in part, was directed to the vehicle and its position in the lane of travel."

*Id.* at 5. Here, unlike Chandler, Smith did not drive the truck he was flagging traffic for. Further, Smith was not protecting the vehicle he drove as Chandler was because it was not protruding onto the road as Chandler's truck was. Smith's focus was on Champlin's truck and the highway. Smith's intended future use of his vehicle is not enough for this Court to find he was oriented towards that vehicle when he was flagging traffic.

### 4. Essential to the Use of the Vehicle

"[T]he "essential use" requirement appears to mean what it says: that the injured party must be engaged in an act essential to the operation of the insured vehicle. *Greenwich Ins. Co. v. Hall*, 2012 WL 5868915, at *2 (E.D. Ky. Nov. 20, 2012). Smith's act of flagging traffic was not essential to the use of his vehicle that was parked off the side of the road. However, flagging traffic was essential to Champlin's vehicle. Similar to *Chandler,* Smith was flagging traffic to help Champlin safely cross from the left side of the road to the right. Nonetheless, Smith was not using Champlin's vehicle.

Smith has not met his burden on all four factors. Therefore, summary judgment in his favor must be denied. This Court finds Smith was not occupying his vehicle at the moment of the accident and therefore there is no coverage. Although the second factor creates a questions of fact, Smith's claim fails as a matter of law due to the other factors.

## C. Basic Reparations Benefits

KRS § 304.39-030(1) states:

"If the accident causing injury occurs in this Commonwealth every person suffering loss from injury arising out of maintenance or use of a motor vehicle has a right to basic reparation benefits, unless he has rejected the limitation upon his tort rights as provided in KRS 304.39-060(4)."

Kentucky Revised Statute (KRS) § 304.39-100 states:

"An insurer authorized to transact or transacting business in this Commonwealth shall file with the commissioner of insurance as a condition of its continued transaction of business within this Commonwealth a form approved by the commissioner of insurance declaring that in any contract of liability insurance for injury, wherever issued, covering the ownership, maintenance or use of a motor vehicle other than motorcycles while the vehicle is in this Commonwealth shall be deemed to provide the basic reparation benefits coverage and minimum security for tort liabilities required by this subtitle, except a contract which provides coverage only for liability in excess of required minimum tort liability coverage. Any nonadmitted insurer may file such form."

KRS 304.39-060(4) provides in relevant part:

> "Any person may refuse to consent to the limitations of his or her tort rights and liabilities as contained in this section. Such rejection must be completed in writing or electronically in a form to be prescribed by the Department of Insurance and must have been executed and filed with the department at a time prior to any motor vehicle accident for which such rejection is to apply. Such rejection form shall affirmatively state in bold print that acceptance of this form of insurance denies the applicant the right to sue a negligent motorist unless certain requirements contained in the policy of insurance are met…Provided, however, any person who, at the time of an accident, does not have basic reparation insurance but has not formally rejected such limitations of his or her tort rights and liabilities and has at such time in effect security equivalent to that required by KRS 304.39-110 shall be deemed to have fully rejected such limitations within meaning of this section for that accident only."

Finally, KRS § 304.39-110 provides:

> (1) The requirement of security for payment of tort liabilities is fulfilled by providing:
>
>> (a) Either:
>>
>>> 1. Split limits liability coverage of not less than twenty-five thousand dollars ($25,000) for all damages arising out of bodily injury sustained by any one (1) person, and not less than fifty thousand dollars ($50,000) for all damages arising out of bodily injury sustained by all persons injured as a result of any one (1) accident, plus liability coverage of not less than twenty-five thousand dollars ($25,000) for all damages arising out of damage to or destruction of property, including the loss of use thereof, as a result of any one (1) accident arising out of ownership, maintenance, use, loading, or unloading, of the secured vehicle; or
>>>
>>> 2. Single limits liability coverage of not less than sixty thousand dollars ($60,000) for all damages whether arising out of bodily injury or damage to property as a result of any one (1) accident arising out of ownership, maintenance, use, loading, or unloading, of the secured vehicle;
>>
>> (b) That the liability coverages apply to accidents during the contract period in a territorial area not less than the United States of America, its territories and possessions, and Canada; and
>>
>> (c) Basic reparation benefits as defined in KRS 304.39-020(2).

Here, Defendant argues Smith has rejected basic reparation benefits. The Court agrees.

Smith has not formally rejected his rights to basic reparation benefits by completing a form and filing it with the Department of Insurance. However, he does not have basic reparation benefits

because Next Generation Management did not pay a premium for that benefit. [DN 5-2 at PageID 220.] Further, the insurance policy provides more than the minimum security required by KRS § 304.39-110. Therefore, it is deemed that Next Generation Management has rejected coverage for this accident only. As such, Defendant owes Smith no basic reparation benefits.

### IV. Conclusion

For the above stated reasons, **IT IS HEREBY ORDERED** that:

1.) Smith's Motion for Partial Summary Judgment [DN 13] is **DENIED.**

2.) Defendant/Counter-claimant's Motion for Summary Judgment [DN 14] is **GRANTED.**

3.) Defendant does not owe Smith uninsured motorist coverage or basic reparation benefits.

4.) All claims against Defendant are **DISMISSED WITH PREJUDICE.**

A separate judgment will follow.

**IT IS SO ORDERED.**

Thomas B. Russell, Senior Judge
United States District Court

May 26, 2020

cc: counsel